DEPARTMENT OF NATURAL RESOURCES, Plaintiff-
Respondent

v.

WISCONSIN POWER & LIGHT COMPANY, Defendant-
Appellant-Petitioner.

Supreme Court

*No. 81-224. Argued June 1, 1982.—Decided July 2, 1982.*

(Also reported in 321 N.W.2d 286.)

For the defendant-petitioner there were briefs by *John H. Schmid, Jr., Michael S. Anderson* and *Brynelson, Herrick, Gehl & Bucaida* of Madison, and oral argument by *John H. Schmid, Jr.*

For the plaintiff-respondent the cause was argued by *Maryann Sumi,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

Amicus curiae brief was filed by *Charles S. Van Sickle, Paul R. Norman* and *Wheeler, Van Sickle, Anderson, Norman & Harvey, S.C.,* of Madison, for Wisconsin Electric Cooperative Association and Federated Rural Electric Insurance Corporation.

STEINMETZ, J.   The issue in this case is whether a person can be held liable under sec. 26.14(9)(b), Stats.,[1] for the costs of fire suppression incurred by the state or town in which the fire occurs in the absence of a showing that the fire was negligently or intentionally set, or negligently or intentionally allowed to become a forest fire.

On October 7, 1980, plaintiff-respondent, State of Wisconsin, Department of Natural Resources (DNR), commenced a small claims action in Marquette county circuit court against defendant-appellant-petitioner, Wisconsin Power & Light Company (WP&L), to recover $63.60, the cost of suppressing "Fire No. 84." The action was tried to the court on December 1, 1980. On January 9, 1981, the Honorable Andrew P. Cotter rendered a memorandum decision in favor of DNR. Judgment was entered on February 5, 1981, against WP&L in the amount of $63.60 plus taxable costs and disbursements.

"Fire No. 84" occurred on June 20, 1979, on private residential property in Wisconia subdivision, town of Montello, Marquette county, Wisconsin. The fire was extinguished by the Montello fire department at a cost of

---

[1] Sec. 26.14(9)(b), Stats., provides:

"**26.14 Forest fires, law enforcement, police power of wardens, compensation, penalties, civil liability.**

". . .

"(b) Any person who sets a fire on any land and allows such fire to escape and become a forest fire shall be liable for all expenses incurred in the suppression of the fire by the state or town in which the fire occurred. An action under this paragraph shall be commenced within the time provided by s. 893.91 or be barred."

$63.60. The fire department submitted a bill for that amount to DNR, which in turn paid the bill. DNR then submitted the bill to WP&L for payment. WP&L denied liability and declined to pay the bill.

At the time of the fire, WP&L owned and maintained an electrical distribution system in Marquette county, a portion of which was located in the Wisconia subdivision within a five-foot easement granted WP&L for the construction and perpetual maintenance of the system. The system consisted of wooden poles with two wires affixed to the top of the poles. One wire was a phase wire and the other a neutral. It is undisputed that at the time of the fire the clearance between the earth and the wires complied with all applicable Wisconsin Administrative Code provisions.

The distribution system was equipped with an "80 T fuse" designed to shut down the flow of electricity through the system in the event electrical current in the system exceeded the size of the fuse. At the time of the fire, the "80 T fuse" operated by tripping and shutting down the flow of electricity through the system.

Persons arriving at the scene of the fire with the Montello fire department observed a tree leaning onto the phase and neutral wires of the WP&L distribution system. It was one of several maple trees in a group. The height of the maple trees exceeded that of the distribution wires. There was conflicting testimony concerning whether the offending maple tree was dead or alive at the time it was blown against the wires; however, there was no disagreement that the tree was standing prior to the fire and that its contact was caused by the weather conditions, *i.e.*, strong winds.

Immediately after the fire, an employee, who was also a member of Montello's fire department, repaired conductors that had been damaged and placed sleeves on the

wires that had melted when the tree blew onto the distribution system.

The clump of maple trees had a clearance of at least ten feet from the distribution lines which clearly placed the trees outside WP&L's utility easement. The tree that was blown onto the line on June 20, 1979, had been growing in such a manner that it leaned away from the distribution system of WP&L and had been trimmed prior to the fire.

The employee of WP&L inspected the distribution system after the fire and noted that the wires had not been severed; consequently, they neither touched nor were lying on the ground. Moreover, the power had shut off; there were no "live wires" because the "80 T fuse" had tripped or closed.

Another member of the Montello fire department who helped suppress the fire testified that it was windy on June 20, 1979, and that the strong winds had blown the maple tree over and onto the WP&L's distribution lines. He also testified that the nature of the fire was primarily that of a grass fire and that the time involved in responding to the fire, extinguishing it and returning to the station was 40 minutes to one hour.

DNR prepared a "Forest Fire Suppression Expense Account" which was signed by a DNR area forest ranger and described the cause and nature of the fire as follows: "Strong winds broke a tree which fell on power line causing break. This started a grass fire requiring suppression action."

A letter dated January 21, 1980, sent from the same DNR area forest ranger to the WP&L stated in pertinent part: "The fire occurred on June 20, 1979 when strong winds broke a tree which landed on your power line. This caused a break & a resulting grass fire which required suppression action."

The trial court concluded that the facts of this case were somewhat analogous to the situation where a fire

has been set as a result of sparks from a tractor or vehicle and noted that it had uniformly imposed liability in such cases.

The court of appeals in affirming the decision of the trial court concluded that: "[S]ec. 26.14(9)(b), Stats., uses the term 'sets a fire' to include not only volitional acts but fires caused by equipment controlled by humans."

The court of appeals further concluded that: "In ordinary usage 'to allow' something to occur means to fail to prevent the occurrence, as well as to consent to or approve of the occurrence."

We disagree with the application of sec. 26.14(9)(b), Stats., made by both the trial court and the court of appeals and, therefore, reverse.

Any liability for the cost of extinguishing the instant fire must be imposed by statute, for there is no common law liability permitting a governmental entity to charge an electric utility for fire suppression expenses. *Town of Howard v. Soo Line RR. Co.,* 63 Wis. 2d 500, 503, 217 N.W.2d 329 (1974).

As we previously indicated:

"This court has frequently stated that statutes are not to be extended so as to impose any duty beyond that imposed by the common law unless such statute clearly and beyond any reasonable doubt expresses such a purpose by language that is clear, unambiguous, and peremptory. *Burke v. Milwaukee & Suburban Transport Corp.* (1968), 39 Wis. 2d 682, 690, 159 N.W.2d 700; *Delaney v. Supreme Investment Co.* (1947), 251 Wis. 374, 380, 29 N.W.2d 754." *Grube v. Moths,* 56 Wis. 2d 424, 437, 202 N.W.2d 261 (1972).

Sec. 26.14(9)(b), Stats., is clear and unambiguous, and it is an axiom of statutory construction that where a statute is unambiguous, the court must give effect to its ordinary and accepted meaning. *Milwaukee v. Lindner,* 98 Wis. 2d 624, 632, 297 N.W.2d 828 (1980).

When statutory language is clear and unambiguous, no judicial rule of construction is permitted, and the court must implement the express intention of the legislature by giving the language its ordinary and accepted meaning. *Milwaukee v. Lindner, supra* at 632, quoting *National Amusement Co. v. Dept. of Revenue,* 41 Wis. 2d .261, 266, 163 N.W.2d 625 (1969).

Sec. 990.01(1), Stats., states:

"GENERAL RULE. All words and phrases shall be construed according to common and approved usage; but technical words and phrases and others that have a peculiar meaning in the law shall be construed according to such meaning."

In *Lindner,* we observed that a statute is ambiguous when it is capable of being understood by reasonably well-informed persons in either of two or more senses. *Lindner, supra* at 632. Also in *Lindner,* we stated that in construing or interpreting a statute the court is not at liberty to disregard the plain, clear words of the statute.

The ordinary and accepted meaning of a word can be established by reference to a recognized dictionary such as Webster's Third New International Dictionary. *In Interest of B.M.,* 101 Wis. 2d 12, 303 N.W.2d 601 (1981); *State ex rel. First Nat. Bank & Trust v. Skow,* 91 Wis. 2d 773, 779, 284 N.W.2d 74 (1979).

Webster's Third New International Dictionary gives numerous definitions of the verb "set." The definitions of "set" describe voluntary or intentional overt action. Synonyms for "set" are fix, settle or establish.

"Allow" is defined in the same dictionary as meaning "to permit" or to "approve, sanction, accept."

No intentional or purposeful act of WP&L caused the fire, and WP&L had no knowledge of the fire until after it was extinguished.

WP&L set its equipment in Wisconia subdivision, but it did not "set a fire" nor did it "allow" a fire to escape and become a forest fire.

Thus, when the plain meaning of the statute is applied to the facts of this case, there is no basis to support any statutory liability on the part of WP&L.

There is nothing in this record establishing any act of WP&L other than placing its distribution lines in an area where the wires were fallen against by a tree growing outside the easement due to an act of nature, *i.e.*, wind. Such an act does not fit the common and ordinary meaning of setting a fire nor of allowing the fire to escape to become a forest fire.

Based on the clear meaning of sec. 26.14(9)(b), Stats., an intentional or negligent act, or omission where there is a duty to act, is a necessary prerequisite for imposition of fire suppression costs.

*By the Court.*—The decision of the court of appeals is reversed.