IN the MATTER OF the GRANDPARENTAL VISITATION OF
C.G.F.:

H.F. and F.F., Appellants-Petitioners,

v.

T.F. and D.L., Respondents.†

Supreme Court

*No. 91-0293-FT. Oral argument March 23, 1992.—Decided
May 7, 1992.*

(Also reported in 483 N.W.2d 803.)

†Motion for reconsideration denied June 23, 1992.

■■■■■■■■

■■■■■■■■

For the appellants-petitioners there were briefs by *Randall E. Rhode,* and *Rhode Law Office,* Portage and oral argument by *Randall E. Rhode.*

For the respondents there was a brief by *Barbara S. Hughes* and *Stolper, Koritzinsky, Brewster & Neider, S.C.,* Madison and oral argument by *Ms. Hughes.*

STEINMETZ, J. The issue in this case is whether a trial court can award visitation rights to grandparents under sec. 880.155, Stats., notwithstanding the child's adoption by a stepparent.[1] The circuit court for Sauk county, Honorable James Evenson, judge, concluded that it was in the best interest of the minor child to have visitation with her paternal grandparents. The court included a provision, however, which stated that the order would have no force or effect in the event the child's stepfather adopted her.

Following the adoption of the child, the grandparents appealed the contingent termination provision created by the circuit court's order. In an unpublished opinion, the court of appeals affirmed the circuit court's decision. The appellate court reasoned that "[a]fter adoption, the stepfather and the mother possess all of the rights of the child's natural parents, including the right to determine whether a relationship with the

---

[1]Section 880.155, Stats., provides as follows:

**880.155 Visitation by grandparents.** If one or both parents of a minor child is deceased and the minor is in the custody of the surviving parent or any other person, any grandparent of the minor may petition for visitation privileges with respect to the minor, whether or not the person with custody is married. The court may grant reasonable visitation privileges to a grandparent if the court determines that it is in the best interests and welfare of the child, may issue any necessary order to enforce the same, and may from time to time modify such privileges or orders upon a showing of good cause.

grandparents is in the child's best interest." We disagree with the court of appeals and reverse its decision. We hold in favor of the grandparents' cause and disregard the contingency provision in the circuit court's order.

■

The application of a statute to a particular set of facts is a question of law which this court reviews without deference to a lower court's determination. *State ex rel. Stedman v. Rohner,* 149 Wis. 2d 146, 150, 438 N.W.2d 585 (1989).

The facts are as follows. The biological father of minor child C.G.F. died on January 15, 1988. The deceased father was the son of H.F. and F.F., who are the grandparents and appellants in this case. The child continued to live with her mother, T.F., after her father died, and the grandparents were allowed to visit their granddaughter on a regular basis. However, the number of times the grandparents were permitted to see their grandchild gradually decreased until ultimately, they were not allowed to see their grandchild at all. The mother remarried on September 6, 1990, and the child's stepfather, D.L., commenced adoption proceedings shortly thereafter.

The grandparents petitioned the circuit court for grandparent visitation pursuant to sec. 880.155, Stats. An evidentiary hearing was held on October 9, 1990.[2] The court entered a detailed order setting forth the grandparents' visitation rights. The court included a contingency provision in the order stating that if the stepparent's adoption of the child was granted, the court's grandparent visitation order would be of no force or effect. Judge Evenson reasoned: "[T]he completion of

---

[2]At the time of the hearing, the stepfather had petitioned for adoption of the minor child but the adoption had not yet been finalized.

the adoption proceedings vests with the parents the determination relating to grandparent visitation." The judge noted, however, that even if the order becomes moot due to adoption, it "does not change the prior Finding of Fact by the Court that such visitation is in the best interest of the child."

The court of appeals relied on *In re Marriage of Soergel,* 154 Wis. 2d 564, 453 N.W.2d 624 (1990) in upholding the trial court's decision. In *Soergel,* the biological parents divorced and the father voluntarily terminated his parental rights to his minor child. The mother remarried and her new husband adopted the minor child. The grandparents were not permitted to see their grandchild after the biological father terminated his parental rights and the stepfather adopted the child.

The grandparents in *Soergel* petitioned for visitation pursuant to sec. 767.245(4), Stats. 1985-86. The circuit court denied the grandparents visitation. After granting certification, this court upheld the circuit court's decision.

After reviewing the Wisconsin legislative history concerning visitation and adoption law, the court concluded that it was not the intent of the legislature to allow visitation under the circumstances found in *Soergel.* Reading sec. 767.245 with sec. 48.92(1) and (2), it said: "Adoption thus has the effect of severing all rights of the adopted child's birth family to the child," and, therefore, to allow the grandparents to have visitation rights with their grandchild "would be at odds with the adoption statute's purpose of severing all rights of [the natural father] and his family." *Id.* at 573-74. Furthermore, we reasoned that the stepfather's adoption of the minor child "established a status between himself and the child that is identical to the status that exists between a natural parent and his or her child." *Id.* at

574. The court therefore concluded that the stepfather and the biological mother had the right to decide whether it is in the best interest of the child to see his/her grandparents.

In the present case, the court of appeals arrived at its holding by applying similar reasoning. It held that: "Section 48.92(1) and (2), Stats., severs all rights of the adopted child's birth family to the child upon the child's adoption" and, as a result, "[a]doption, in effect, terminates the grandparents' status as grandparents."

We conclude that the court of appeals incorrectly relied on *Soergel* and therefore reverse the court of appeals decision. There are important factual distinctions between the present case and *Soergel* rendering the logical underpinnings of *Soergel* inapplicable to this case which are set forth below.

First, we find a clear distinction between the father's termination of parental rights in the *Soergel* case and the severing of the father's rights in the present case. In *Soergel,* the child's natural father willfully terminated his parental rights by going through a legal process. In the present case, the father's death severed his rights. Wisconsin law defines parent as "either a biological parent . . . or a parent by adoption. . . ." *See* sec. 48.02(13). Moreover, it is recognized that " '[p]arent' does not include any person whose parental rights have been terminated." *Id.* The father who terminated his parental rights in *Soergel* is no longer legally considered a parent. In contrast, despite the fact the father in the present case is dead, he nevertheless falls within the definition of a parent. Since the deceased father continues to be considered a parent, we find his parents should continue to be considered grandparents.

A second differentiating factor between *Soergel* and the present case is that the grandparents in *Soergel* petitioned for visitation pursuant to sec. 767.245(4), Stats. The grandparents in the present case, on the other hand, petitioned for visitation pursuant to sec. 880.155. Section 880.155 is a very narrow statute which affords visitation to only a limited class of persons, *i.e.,* grandparents of a child whose parent is deceased. It is further limited by a requirement that visitation be granted only if the court determines that visitation is in the best interest of the child. In contrast, under the statute applied in *Soergel,* ch. 767, visitation rights are afforded to grandparents, great-grandparents, stepparents, or others who have had a relationship similar to a parent-child relationship with the minor child.[3] We find the holding in *Soergel* was limited to grandparent petitions made pursuant to ch. 767 and cannot be applied to petitions made pursuant to sec. 880.155.

Another important distinction between *Soergel* and the present case is that the *Soergel* majority relied heavily on *Estate of Topel,* 32 Wis. 2d 223, 145 N.W.2d 162 (1966), as support for the proposition that adoption completely terminates the relationship between an adopted child and his birth parents' family. In *Topel* the court concluded that sec. 48.92(1) and (2), Stats., prevented children from inheriting via intestate succession from the grandfather's estate.

---

[3]Chapter 767 deals with actions affecting the family, including affirming marriages, annulments, divorce, legal separation, custody, child support, maintenance payments, property division, modification of judgments affecting the family, periodic family support payments, physical placement or visitation rights to children, and paternity. *See* sec. 767.02, Stats.

There is no exception in the present statute to this complete substitution of adoptive relationship for the natural relationship. We think the intent of sec. 48.92, Stats., from its language is to effect upon adoption a complete substitution of rights, duties, and other legal consequences of the natural relation of child and parent and kin with those same rights, duties, and legal consequences between the adopted person and the adoptive parents and kin.

*Topel,* 32 Wis. 2d at 227.

Since the *Topel* decision, the legislature has evidenced an intent to maintain ties between a child adopted by a stepparent and the child's biological grandparents by creating an exception to sec. 48.92(1) and (2), Stats., through the enactment of sec. 48.92(3).[4] When reading the latter in conjunction with sec. 851.51, sec. 48.92(3) allows intestate inheritance rights to exist between a child and his birth parent's family after the birth parent's death and the child's subsequent stepparent adoption.[5] Pursuant to sec. 851.51, a child can

---

[4]Section 48.92(1), (2) and (3), Stats., provides as follows:

**48.92 Effect of adoption. (1)** After the order of adoption is entered the relation of parent and child and all the rights, duties and other legal consequences of the natural relation of child and parent thereafter exists between the adopted person and the adoptive parents.

**(2)** After the order of adoption is entered the relationship of parent and child between the adopted person and his birth parents, unless the birth parent is the spouse of the adoptive parent, shall be completely altered and all the rights, duties and other legal consequences of the relationship shall cease to exist.

**(3)** Rights of inheritance by, from and through an adopted child are governed by s. 851.51.

[5]When the legislature enacts a statute, it is presumed to act with the full knowledge of existing statutes. *Wood v. American*

inherit by intestate succession through both the birth parents' family and the adoptive parent's family. That section creates rights not just for the child but also for the biological grandparents. In pertinent part, it states: "[T]he child is treated as the child of the deceased natural parent . . . for purposes of any statute conferring rights upon . . . relatives of that parent under the law of intestate succession or wills." Section 851.51(2)(b). Not only could the grandchild in this case inherit from the grandparents, but they could inherit theoretically, via intestate succession, from her. Thus, sec. 851.51 creates an exception to sec. 48.92 which allows an economic relationship to continue between an adoptive stepchild and his or her birth grandparents. This is an exception that is available only to a very limited class of persons, those children whose natural parent has died and who subsequently have been adopted by a stepparent.[6] The grandchild in the present case falls within this class.

Today the *Topel* decision is controlling only in cases involving adoptions subsequent to a termination of parental rights. It offers no analytical guidance in those cases involving adoption after the death of a natural parent. Because *Soergel* relied on *Topel*, it is neither controlling nor properly interpretative of legislative

---

*Fam. Mut. Ins. Co.*, 148 Wis. 2d 639, 436 N.W.2d 594 (1989). It must be assumed then that the legislature did not intend to create a conflict, but rather to create an exception to sec. 48.92.

[6]This court also finds the plain meaning of sec. 880.155, Stats., creates an exception to sec. 48.92(1) and (2). there is no need to resort to statutory interpretation or an analysis of legislative intent if a statute is clear on its face. *Rice v. City of Oshkosh*, 148 Wis. 2d 78, 435 N.W.2d 252 (1989). The statutes under chapter 48 are broader statutes purporting to apply to all adoptions. They were in existence in their current form at the time that the legislature implemented sec. 880.155.

intent where grandparents seek visitation pursuant to sec. 880.155, Stats.

A trial court's authority to grant grandparent visitation pursuant to sec. 880.155, Stats., continues even after subsequent adoption. The statute allows the trial court, in the best interest of the child, to order grandparental visitation in direct opposition to the wishes of the custodian regardless of who the custodian is. To hold that an adoptive parent has rights to override the provisions of sec. 880.155 would be to apply an exception to the statute that does not exist. To judicially impose such an exception would create rights for an adoptive parent superior to those that exist for a natural parent. Once the grandparents in this case were ordered visitation rights with their minor grandchild, they should not have been deprived of those rights without due process. Because sec. 880.155, Stats., allows grandparent visitation to continue subsequent to adoption of the child, we reverse the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is reversed.

CHIEF JUSTICE HEFFERNAN, took no part.

SHIRLEY S. ABRAHAMSON, J. *(concurring).* I write separately because I believe that the majority opinion in this case is inconsistent with *In re Marriage of Soergel,* 154 Wis. 2d 564, 574, 453 N.W.2d 624 (1990), the court's most recent decision concerning grandparents' visitation rights after adoption of the child. While I believe that this case implicitly overrules *Soergel,* I would expressly overrule *Soergel.*

Just two years ago, interpreting secs. 48.92 and 767.245(4), Stats. 1985–86,[1] this court wrote that adop-

---

[1]Section 767.245(4), Stats. 1985–86, has been amended and

tion "has the effect of severing all rights of the adopted child's birth family to the child," in effect terminating the biological grandparents' status as grandparents. Permitting the grandparents visitation rights would, wrote the court, "be at odds" with this purpose of the adoption statute, sec. 48.92(1), (2).[2] The court further wrote that the relationship between the adoptive parent and the child is identical to that between a natural parent and a child. "One of the rights parents have as a result of the natural relation of parent and child is the right to determine whether a relationship with the grandparents, or any other person, is contrary to the child's best interests." *Soergel,* 154 Wis. 2d at 574.

In attempting to distinguish *Soergel,* the majority notes that the father in *Soergel* voluntarily terminated his parental rights whereas the father in this case died. True, but the *Soergel* court based its decision on the adoption proceedings, not on the termination proceedings. I find no basis for concluding that the legislature intended that the right of adoptive parents to control who visits their child depends on the manner by which

is now set forth in sec. 767.245(1), Stats. 1989–90. The provision remains essentially the same for purposes of this case.

[2]Sections 48.92(1), (2), Stats. 1989–90, prior to the enactment of 1991 Wis. Act 191, completely supported the holding of *Soergel:*

**48.92 Effect of adoption. (1)** After the order of adoption is entered the relation of parent and child and all the rights, duties and other legal consequences of the natural relation of child and parent thereafter exists between the adopted person and the adoptive parents.

**(2)** After the order of adoption is entered the relationship of parent and child between the adopted person and his birth parents, unless the birth parent is the spouse of the adoptive parent, shall be completely altered and all the rights, duties and other legal consequences of the relationship shall cease to exist.

the adoption arises. An adoption is an adoption. Likewise, contrary to the majority's assertion, I find no basis for concluding that to allow grandparents rights of visitation under sec. 767.245(4), Stats. 1985–86, the statute at issue in *Soergel,* "would be at odds with the adoption statute's purpose of severing all rights of [the father] and his family to the child," *Soergel,* 154 Wis. 2d at 574, whereas to allow grandparents visitation under sec. 880.155, Stats. 1989–90, the statute at issue in this case, would not be at odds with the adoption statute's purpose of severing all rights of the father and his family. I conclude that the decision in this case is inconsistent with the *Soergel* decision, and I would expressly overrule *Soergel.*

After this case was argued, the legislature adopted 1991 Wis. Act 191 which addresses visitation rights of certain persons following adoption of a child by a relative or stepparent. The effect of the new legislation on the facts of this case is not, of course, in issue.

The new statute adds the following sentence to sec. 48.92(2), the statute governing the effect of an adoption: "Notwithstanding the extinction of all parental rights under this subsection, a court may order reasonable visitation under s. 48.925." (Section 48.92(2) is set forth in the margin at note 2.) Furthermore, a court may grant reasonable visitation rights to relatives who have maintained "a relationship similar to a parent-child relationship with a child who has been adopted." In deciding whether to grant visitation rights under the statute, a court must determine whether visitation is in the best interests of the child and whether visitation will undermine the adoptive parents' relationship with the child. Further, the court must determine whether the visitor will act in a manner contrary to the parenting decisions

73

of the adoptive parents.[3]
 For the reasons set forth, I concur.

[3]1991 Wis. Act 191 reads in part:

SECTION 2. 48.925 of the statutes is created to read:

**48.925 Visitation rights of certain persons.**
**(1)** Upon petition by a relative who has maintained a relationship similar to a parent-child relationship with a child who has been adopted by a stepparent or relative, the court may grant reasonable visitation rights to that person if the petitioner has maintained such a relationship within 2 years prior to the filing of the petition, if the adoptive parent or parents, or, if a birth parent is the spouse of an adoptive parent, the adoptive parent and birth parent, have notice of the hearing and if the court determines all of the following:

(a) That visitation is in the best interest of the child.

(b) That the petitioner will not undermine the adoptive parent's or parents' relationship with the child or, if a birth parent is the spouse of an adoptive parent, the adoptive parent's and birth parent's relationship with the child.

(c) That the petitioner will not act in a manner that is contrary to parenting decisions that are related to the child's physical, emotional, educational or spiritual welfare and that are made by the adoptive parent or parents or, if a birth parent is the spouse of an adoptive parent, by the adoptive parent and birth parent.

**(2)** Whenever possible, in making a determination under sub. (1), the court shall consider the wishes of the adopted child.
. . .