BANKS BROS. CORPORATION, Plaintiff-Respondent,

v.

DONOVAN FLOORS, INC., Breakfall, Inc., James P. Donovan and Jo Ann Donovan, Defendants-Appellants.

Court of Appeals

*No. 99–3124. Submitted on briefs September 5, 2000.—Decided October 3, 2000.*

2000 WI App 253

(Also reported in 620 N.W.2d 631.)

381

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Donald A. Schoenfeld, Miriam S. Fleming* and *Katherine W. Schill* of *Michael Best & Friedrich LLP,* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Patrick B. Howell* and *Curtis A. Paulsen* of *Whyte Hirschboeck Dudek S.C.,* of Milwaukee.

Before Wedemeyer, P.J., Fine and Vergeront, JJ.

¶ 1. FINE, J. James P. Donovan, Jo-Ann Donovan, Donovan Floors, Inc. and Breakfall, Inc. appeal from the trial court's order denying their motion for

relief from a stipulated judgment of foreclosure on the Donovans' home.[1] We affirm.[2]

## I.

¶ 2. This case involves the interrelationship between a debt, collateral, and provisions of Wisconsin's version of Article 9 of the Uniform Commercial Code, specifically WIS. STAT. §§ 409.505(2) and 409.501(3).

¶ 3. In 1990, Donovan Floors and Breakfall, two companies controlled by the Donovans, owed Bank One, Milwaukee, NA, some $245,000. James Donovan had previously guaranteed the debt, and the Donovans had also given to Bank One a mortgage on their house to secure the debt. Additionally, the companies gave to Bank One security interests in their property, also as security for the debt. The debt was also secured by an assignment of a life-insurance policy on James Donovan as well as a patent mortgage assigned to Bank One by Breakfall.

¶ 4. Donovan Floors and Breakfall defaulted on the debt, and James Donovan defaulted on his guarantee. In late 1991, after the defaults, Bank One sued James Donovan on his guarantee, the companies to recover on the collateral, and the Donovans to foreclose on the mortgage. Subsequently, in early 1992, the case was settled when Bank One and the Donovans, Donovan Floors, and Breakfall stipulated to the entry of a judgment foreclosing on the Donovans' home and

[1] Mrs. Donovan's first name is alternatively spelled in the record as "Jo Ann," "JoAnn," and "Jo-Ann." Documents on which her signature appears spell it "Jo-Ann." Accordingly, so do we.

[2] We appreciate both parties having supplied us with copies of non-Wisconsin law and treatise excerpts upon which they relied.

replevin in connection with the property given to Bank One as security for the debt. Bank One agreed to give the Donovans a chance to revitalize their business, and, pursuant to that arrangement, Bank One, the Donovans, Donovan Floors, and Breakfall executed two forbearance agreements pursuant to which Bank One deferred its immediate enforcement of the judgment.

¶ 5. In early 1993, Bank One assigned the debt and the security to the predecessor of Banks Bros. Corporation. A month later, Banks, the Donovans, Donovan Floors, and Breakfall signed an agreement entitled: "Notice of Assignment of Judgment, Security Interest, and Mortgage, and Agreement for Surrender of Collateral and Other Property, and Reduction of Indebtedness." (Uppercasing and underlining omitted.) Under that "Notice of Assignment," the parties agreed, as material here, that:

- The Notice of Assignment "shall also constitute notice pursuant to § 409.505(2), Wis. Stats., that BANKS intends to retain possession of certain collateral pledged and surrendered by BREAKFALL and DONOVAN FLOORS, and satisfies the debt as to BREAKFALL only." (Uppercasing in original.)

- As consideration for the surrender of the property, the debt, which then stood at some $267,000, was to be "reduced by the sum of $25,000."

- In return for an additional $25,000 reduction of the debt owed by James Donovan and Donovan Floors, Donovan Floors surrendered to Banks three cars, one van, and one truck.

- "BANKS, DONOVANS, BREAKFALL, and DONOVAN FLOORS hereby agree that upon

surrender" of the property specified in the Notice of Assignment, "BREAKFALL shall be released from all further liability to BANKS, but that JAMES DONOVAN and DONOVAN FLOORS shall remain liable to BANKS for the balance due in the amount of $217,169.38 . . . and that JO-ANN DONOVAN shall remain liable to BANKS to the extent of her interest in the homestead and other marital property." (Uppercasing in original.)

- The Donovans and Donovan Floors "agree that all of the property which had previously been pledged to BANK ONE for the loan which is herein assigned by BANK ONE to BANKS shall remain encumbered and secured to BANKS as collateral for the balance due." (Uppercasing in original.)

- Banks agreed to extend the Forbearance Agreement conditioned on its receipt of certain specified payments according to a payment schedule set out in the Notice of Assignment.

The parties to the Notice of Assignment had a falling out, and Banks never received any money under the payment schedule. Ultimately, after some six years of strained relationships between Banks and the Donovans, Banks scheduled a sheriff's sale of the Donovans' home. The Donovans and their companies then brought the motion that underlies this appeal, seeking an order under WIS. STAT. § 806.07(1)(e) relieving them from the judgment of foreclosure, and dismissing Banks' "claim for a money judgment against James P. Donovan."[3] As noted, the trial court denied their motion.

---

[3] WISCONSIN STAT. § 806.07(1) provides:

## II.

¶ 6. Although the Donovans and their companies asserted a number of reasons in support of their motion seeking relief from the foreclosure judgment, only one is pursued on this appeal—they contend, as phrased in their motion before the trial court, that "[t]he Foreclosure Judgment was completely satisfied when Banks Bros. retained the Personal Property. (Wis. Stats. § 409.505(2))." They argue that the satisfaction of the Breakfall debt that was memorialized in the Notice of Assignment operates, by virtue of WIS. STAT. § 409.505(2), also as a satisfaction of the debt as to both Donovan Floors and the Donovans. Whether they are correct turns on an analysis of § 409.505(2) and WIS. STAT. § 409.501(3).

¶ 7. The facts material to our decision are not disputed. Accordingly, our review is *de novo*. *See Thelen v. DHSS*, 143 Wis. 2d 574, 577, 422 N.W.2d 146, 147 (Ct. App. 1988) (interpretation of statute on undis-

---

**Relief from judgment or order.** (1) On motion and upon such terms as are just, the court, subject to subs. (2) and (3), may relieve a party or legal representative from a judgment, order or stipulation for the following reasons:

 (a) Mistake, inadvertence, surprise, or excusable neglect;

 (b) Newly-discovered evidence which entitles a party to a new trial under s. 805.15 (3);

 (c) Fraud, misrepresentation, or other misconduct of an adverse party;

 (d) The judgment is void;

 (e) The judgment has been satisfied, released or discharged;

 (f) A prior judgment upon which the judgment is based has been reversed or otherwise vacated;

 (g) It is no longer equitable that the judgment should have prospective application; or

 (h) Any other reasons justifying relief from the operation of the judgment.

puted facts is question of law subject to *de novo* review). We apply statutes to give effect to their plain meaning. *See DNR v. Wisconsin Power & Light Co.,* 108 Wis. 2d 403, 408, 321 N.W.2d 286, 288 (1982).

¶ 8. WISCONSIN STAT. § 409.505(2) provides, as material to this appeal:

> [A] secured party in possession may, after default, propose to retain the collateral in satisfaction of the obligation. Written notice of such proposal shall be sent to the debtor if the debtor has not signed after default a statement renouncing or modifying the debtor's rights under this subsection . . . . If the debtor . . . objects in writing within 21 days from the receipt of the notification . . . the secured party must dispose of the collateral under s. 409.504. In the absence of such written objection the secured party may retain the collateral in satisfaction of the debtor's obligation.

As we have seen, the Donovans and Donovan Floors argue that this provision transforms the satisfaction of the debt as to Breakfall into a total satisfaction of the debt as to all of the debtors, and, therefore, the foreclosure judgment should be set aside because there is no underlying debt. Acknowledging that they signed the Notice of Assignment, and thus agreed that the debt would be satisfied as to Breakfall only, the Donovans and Donovan Floors contend that their agreement is forbidden by WIS. STAT. § 409.501(3), which as material here, provides:

> To the extent that they give rights to the debtor and impose duties on the secured party, the rules stated in the sections and subsections referred to in pars. (a) to (e) may not be waived or varied . . . but the parties may by agreement determine the standards by which the fulfillment of these rights and

duties is to be measured if such standards are not manifestly unreasonable:

. . .

(c) Section 409.505(2) which deals with acceptance of collateral as discharge of obligation;

Banks, on the other hand, argues that WIS. STAT. § 409.505(2) *itself* gives to the creditor and debtor the authority to modify the rights fixed by that subsection, when it provides: "[A] secured party in possession may, after default, propose to retain the collateral in satisfaction of the obligation. Written notice of such proposal shall be sent to the debtor *if the debtor has not signed after default a statement renouncing or modifying the debtor's rights under this subsection.*" § 409.505(2) (emphasis added).

¶ 9. Banks's syllogism is this: WIS. STAT. § 409.505(2) permits the secured creditor to "propose to retain the collateral in satisfaction of the obligation," and, if the secured creditor seeks to do that, the secured creditor must send to the debtor "[w]ritten notice of such proposal." In such a case, the debt would be satisfied in full. Section 409.505(2), however, gives to the debtor the power to "renounc[e] or modify[ ]" the rights that the debtor has under the subsection, so long as the agreement "renouncing or modifying" those rights is "signed" by the debtor "after default" on the debt. Thus, Banks argues, although the Notice of Assignment was described as a notice under § 409.505(2), it was *also* a contemporaneous agreement (or, to use the terminology of § 409.505(2), a "statement"), executed after default, between Banks, Donovan Floors, and the Donovans by which the Donovans and Donovan Floors renounced and modified their right under § 409.505(2) to complete satisfaction of the debt, and by which they

388

agreed that the satisfaction of the debt would run to Breakfall only. We agree with Banks.

¶ 10. Somewhat surprisingly, there are no cases directly on point—that is, dealing with a situation where, as here, a secured creditor has satisfied a debt as to some but not all debtors, and where, after default, all the debtors agreed to that arrangement in a statement signed by them. WISCONSIN STAT. § 409.505(2), however, clearly grants to debtors the right to renounce or modify the normal *quid pro quo* for what is, in essence, strict foreclosure under § 409.505(2): full satisfaction of the debt. Thus, a treatise in the area notes:

> Upon default and repossession, the secured creditor may wish to avoid the headache of resale and therefore accept the collateral in complete satisfaction of the debt under 9–505(2). The creditor so foregoes [*sic*] any right to a deficiency. This alternative of "strict foreclosure" was known to the common law and was available under the Uniform Conditional Sales Act.
>
> . . .
>
> All judges appear to agree that if the debtor has expressly agreed after default that the secured creditor may take the collateral at an agreed valuation in *partial* satisfaction of the debt, the secured creditor may still recover the balance owing. This would be a "modification" permissible under 9–505(2), second sentence. But in the absence of such a modifying agreement, some courts appear to hold that the case automatically falls in 9–505(2) as a full strict foreclosure bars any further recovery by the secured creditor.

4 JAMES J. WHITE & ROBERT S. SUMMERS, UNIFORM COMMERCIAL CODE, § 34–9, at 425, 428 (4th ed. 1995)

(emphasis in original; footnotes omitted).[4] Stated another way, in return for the relatively inexpensive and expeditious application of the secured property to the debt, the secured creditor forgoes the right to chase the debtor for any deficiency. After default on the debt, however, debtors may renounce that *quid pro quo* for something more valuable—time within which to reorganize a business with the hope of saving it. That is what was done here.

¶ 11. Understandably, the Donovans and Donovan Floors would love to have their cake (the chance to save their business given to them by Banks's agreement to hold off on its right to claim the assets pledged for the debt) and eat it also (keep those assets). But that is not the way WIS. STAT. § 409.505(2) works. Banks had a right under that section to immediate strict foreclosure of all the pledged assets. It gave up that right in consideration for a partial payment on the debt and the concomitant partial satisfaction. The Donovans and Donovan Floors have no legal or moral ground to complain; they agreed to that arrangement, and did so in a statement signed after default. This makes the arrangement legal under § 409.505(2).[5]

---

[4] The "all judges" comment refers to *S.M. Flickinger Co., Inc. v. 18 Genesse Corp.*, 423 N.Y.S.2d 73 (N.Y. App. Div. 1979), where the issue is discussed by both the majority and the dissent, but neither discussion is material to the holding.

[5] The Donovans, Donovan Floors, and Breakfall argue that a change in the Uniform Commercial Code, not yet adopted in Wisconsin, reflects the correctness of their argument. What was covered in Uniform Commercial Code § 9–505(2) is now in, as material here, § 9–620. The new provision reads, as material to our discussion: "[A] secured party may accept collateral in full or partial satisfaction of the obligation it secures only if: (1) the

*By the Court.*—Order affirmed.

debtor consents to the acceptance under subsection (c)." U.C.C. (Revised) § 9–620(a). Consent by the debtor is, again as material to our discussion, defined by the new provision as follows: "[A] debtor consents to an acceptance of collateral in partial satisfaction of the obligation it secures only if the debtor agrees to the terms of the acceptance in a record authenticated after default." *Id.* § 9–620(c)(1). Although the Official Comment to this revision states: "Section 9–620, unlike former Section 9–505, permits a secured party to accept collateral in partial satisfaction, as well as full satisfaction, of the obligations secured," *see id.* § 9–101, cmt. 4(i), this comment ignores the clear import of the "if the debtor has not signed after default a statement renouncing or modifying the debtor's rights under this subsection" from § 9–505(2) (WIS. STAT. § 409.505(2)), which, without ambiguity, authorizes the debtor to renounce or modify its rights under § 9–505(2) (WIS. STAT. § 409.505(2)).