**In the Matter of MAX SCHWARTZMAN & SONS, INC., Schwartzman Company, Inc., Jon Schwartzman, an individual.**

**Max Schwartzman & Sons, et al., Relators,**

v.

**Minnesota Pollution Control Agency, Respondent.**

Nos. C4–03–389, A03–224.

Court of Appeals of Minnesota.

Oct. 28, 2003.

Thomas Pursell, Peter Tester, DeAnne Hilgers, Lindquist & Vennum, P.L.L.P., St. Paul, for relators.

Mike Hatch, Attorney General, Ann E. Cohen, Assistant Attorney General, St. Paul, for respondent.

Considered and decided by RANDALL, Presiding Judge, HALBROOKS, Judge, and HUDSON, Judge.

## OPINION

HALBROOKS, Judge.

In this consolidated appeal, relators Schwartzman Company, Inc., Max Schwartzman & Sons, Inc., and Jon Schwartzman challenge the Minnesota Pollution Control Agency's (MPCA) January 28, 2003 administrative order and its denial of relators' request for a contested-case hearing. Relators argue that (1) the MPCA's order requiring relators within six months to remove an earthen berm constructed with shredder fluff on their property is not supported by substantial evidence and (2) the MPCA erred in holding that the use of the shredder fluff in the berm constitutes disposal of solid or hazardous waste. Because we conclude that the MPCA's decision to require relators to remove the berm within six months is not arbitrary and capricious, that the MPCA did not err in holding that the use of shredder fluff in the berm constitutes the disposal of solid or hazardous waste, and that the MPCA did not err in denying relators' request for a contested-case hearing, we affirm.

## FACTS

Relators Schwartzman Company, Inc., Max Schwartzman & Sons, Inc., and Jon Schwartzman own and operate a scrap metal and metal-recycling facility in Anoka. In May 1999, relators installed a metal shredder to shred automobiles, appli-

ances, and miscellaneous industrial scrap metal. The shredding process creates a waste material called shredder fluff that is comprised primarily of non-metallic materials. Shredder fluff can sometimes be disposed of at landfills for relatively minimal cost because the landfills use the shredder fluff for daily-cover material. But shredder fluff often contains polychlorinated biphenyls (PCBs). Before accepting shredder fluff, landfills must analyze the material in accordance with their disposal-facility permit. Under Minnesota law, shredder fluff containing PCBs of more than 50 parts per million (ppm) is considered hazardous waste that must be disposed of in a hazardous-waste-management facility and not in a less expensive solid-waste landfill.[1] Minn. R. 7045.0135, subp. 5 (2001).

In July and August 2000, neighborhood residents around relators' facility began making complaints to the Anoka City Council regarding the facility's noise and vibration. In response, the city conducted noise tests and found some violations of state noise rules. As a result, the city asked relators to construct a barrier. Relators hired an environmental consulting firm to perform noise and vibration testing and to recommend remedies. Upon completion of testing, the consulting firm recommended that a fence, earthen berm, or both be installed along the southwestern sides of relators' property.

During October and November 2000, relators constructed a 12–20 foot fence along

the south side and an earthen berm on the southwestern side of the property. The berm is composed of approximately 17,000 cubic yards of material, of which 6,800 cubic yards is shredder fluff.

Respondent Minnesota Pollution Control Agency (MPCA) staff inspected relators' facility on May 17, 2001 to determine if relators were in compliance with the rules governing solid and hazardous waste and storm-water management and control. MPCA staff documented the construction of the berm using shredder fluff and also observed that relators' storm-water plan did not address the construction of the berm. The MPCA met with relators and requested additional information, which relators provided. The MPCA also obtained results from tests performed on relators' shredder fluff in August and September 2002 that showed PCB levels above 50 ppm.

On November 30, 2001, Anoka County and MPCA staff inspected relators' facility pursuant to a criminal search warrant and took three samples from the berm and five samples from shredder-fluff piles at various site locations. Test results showed that two of the three berm samples exceeded 50 ppm PCBs and that one of the five samples taken from the shredder-fluff piles exceeded 50 ppm PCBs.

The MPCA issued an administrative order on January 16, 2002, requiring relators to return to compliance by submitting a sampling and testing plan for the shredder fluff in the berm. The purpose of the

---

1. In June 1999, relators approached the Elk River Landfill regarding the disposal of shredder fluff. The landfill received approval from Sherburne County to accept the fluff. In accordance with the landfill's acceptance procedures, relators began testing samples of the shredder fluff on a weekly basis. Samples collected on August 25, 2000, September 8, 2000, and September 15, 2000, contained PCB levels of 57.4 ppm, 63 ppm, and 53 ppm,

respectively. While the landfill inadvertently accepted 67 tons of fluff from relators, once the landfill realized that the fluff had PCB levels in excess of 50 ppm, it notified relators that they would no longer accept shredder fluff from them. Relators have stated that the high PCB levels may have been attributable to the shredding of improperly gutted appliances.

sampling and testing plan was to provide data about the materials used to construct the berm in order to allow for appropriate disposal of the materials upon removal. Once the sampling and testing were complete, relators were required to submit a plan for removal of the waste material to appropriate facilities.

For almost one year, the parties attempted to negotiate a settlement and agree on a clean-up plan and schedule for removal of the berm. But in a letter dated January 8, 2003, the MPCA terminated negotiations with relators and stated that the MPCA was considering issuing an administrative order.

On January 14, 2003, the MPCA provided relators and other interested persons with notice of its intent to issue an administrative order. The proposed administrative order required relators to complete the sampling and testing of the berm in accordance with the plan they had submitted. The plan divided the berm into 20 segments and provided that each segment of the berm would be managed as solid or hazardous waste, depending on the composite test results. The order also required that the entire berm and other shredder-fluff piles on relators' property be removed within six months, but allowed for a time extension for good cause.

The MPCA accepted comments on the proposed order for ten days, during which time a number of interested persons, including relators, submitted comments. In their comments, relators stated that they did not believe that they could meet the six-month removal deadline. Relators requested that the deadlines be extended to 36 months for removal of the berm and 24 months for removal of the storage piles. The timing issue was the only comment made by relators concerning the proposed order.

The MPCA subsequently issued its administrative order on January 28, 2003. While some changes were made to the language of the proposed order, the MPCA did not change the six-month deadline for removal of the berm and disposal of all shredder fluff. In a letter to relators, the MPCA stated:

> The MPCA received your comments to the Order, dated January 23, 2003, in which you state that the [relators] can meet some of the conditions of the Order, but that the [relators] expected some problems in meeting the 6 month disposal timeline for disposal of the shredder fluff. The MPCA has considered your comments but has concluded that the 6 months time should be adequate to remove shredder fluff that is improperly stored at the Facility. The [relators] have known of their obligation to remove the shredder fluff for over a year. In addition, if the [relators] cannot remove the fluff in accordance with the time schedule in the Order due to circumstances beyond their control, the Order provides a procedure for requesting extensions.

Relators proceeded with the testing and sampling required by the MPCA's order and submitted documents in accordance with its requirements on February 14, 2003. Five days later, on February 19, 2003, relators requested a contested-case hearing

> to determine whether [relators'] construction of a sound berm from non-metallic "shredder fluff" constitutes the "disposal" or "storage" of "solid waste" or "hazardous waste" under Minnesota law, as found and concluded in the Order. [Relators] challenge the findings and conclusions underlying said provisions of the Order. They request findings that the shredder fluff is not "waste," and that the construction of the

berm is not "disposal" or "storage" of waste. [Relators] will ask the agency that the Order to be amended accordingly.

The MPCA denied relators' request for a contested-case hearing on the grounds that the request was untimely and the request failed to raise a material issue of fact.

Relators appealed both the MPCA's administrative order and its denial of relators' request for a contested-case hearing. This court granted relators' motion to consolidate the two appeals.

## ISSUES

1. Is the MPCA's decision that requires relators to remove the berm within six months arbitrary and capricious?

2. Did the MPCA err as a matter of law in concluding that relators' use of shredder fluff to construct the berm constituted the "disposal" or "storage" of solid or hazardous "waste?"

3. Did the MPCA err in denying relators' request for a contested-case hearing?

## ANALYSIS

### I.

■ The decision of an administrative agency will be affirmed on appeal unless there is an error of law, the determinations are arbitrary and capricious, or the findings are unsupported by the evidence. *In re N. State Power Co. for Approval of its 1998 Resource Plan*, 604 N.W.2d 386, 389 (Minn.App.2000), *review denied* (Minn. Mar. 28, 2000). The scope of this court's review of administrative decisions is provided in Minn.Stat. § 14.69 (2002):

[T]he court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the administrative finding, inferences, conclusion, or decisions are:

(a) in violation of constitutional provisions; or

(b) in excess of the statutory authority or jurisdiction of the agency; or

(c) made upon unlawful procedure; or

(d) affected by other error of law; or

(e) unsupported by substantial evidence in view of the entire record as submitted; or

(f) arbitrary and capricious.

When reviewing agency decisions we "adhere to the fundamental concept that decisions of administrative agencies enjoy a presumption of correctness, and deference should be shown by courts to the agencies' expertise and their special knowledge in the field of their technical training, education, and experience." *In re Excess Surplus Status of Blue Cross & Blue Shield of Minn.*, 624 N.W.2d 264, 278 (Minn.2001) (quoting *Reserve Mining Co. v. Herbst*, 256 N.W.2d 808, 824 (Minn. 1977)).

■ Relators argue that the MPCA's decision requiring them to remove the berm within six months is not supported by substantial evidence. The substantial-evidence standard of review is generally applied to an administrative agency's findings of fact. *See, e.g., Saif Food Market v. Comm'r, State, Dep't of Health*, 664 N.W.2d 428, 430 (Minn.App.2003) (finding that substantial evidence supported the commissioner's decision); *In re Hutchinson*, 440 N.W.2d 171, 177 (Minn.App.1989), *review denied* (Minn. Aug. 9, 1989) (finding that the racing commission's finding of fact was supported by substantial evidence). Because the MPCA's decision to impose a six-month timeline on the removal of the

berm is not a factual finding but a legal conclusion, we review this decision under an arbitrary and capricious standard. *See Reserve Mining*, 256 N.W.2d at 827 (stating the standard of review as "whether or not their findings are unsupported by substantial evidence; and whether or not their conclusions are arbitrary or capricious.").

■ An agency decision is arbitrary and capricious when the decision represents the agency's will rather than its judgment. *In re Quantification of Envtl. Costs*, 578 N.W.2d 794, 799 (Minn.App. 1998), *review denied* (Minn. Aug. 18, 1998). A decision will be deemed arbitrary and capricious if the agency relied on factors which the legislature had not intended it to consider, if it entirely failed to consider an important aspect of the problem, if it offered an explanation for the decision that runs counter to the evidence, or if the decision is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. *Trout Unlimited, Inc. v. Minn. Dep't of Agric.*, 528 N.W.2d 903, 907 (Minn.App. 1995), *review denied* (Minn. Apr. 27, 1995).

■ Relators argue that the six-month time frame for removal is unreasonable because the MPCA gave no justification for the time frame and because during earlier, unsuccessful settlement negotiations, the MPCA stated a willingness to give relators two years to remove the berm. In support of their position, relators rely on a letter from the MPCA to relators dated November 27, 2002, at which time the MPCA indicated a willingness to consider a longer time frame. The MPCA's November 27, 2002 letter was one of the documents at issue in a motion to strike brought by the MPCA. We granted the MPCA's motion, in part, in an earlier, separate order. With respect to the letter, we concluded that it is inadmissible because it was not part of the agency record

and because evidence relating to a settlement negotiation is inadmissible under Minn. R. Evid. 408. Thus, the letter is not part of the record and will not be considered on appeal.

Among other requirements, the MPCA's January 16, 2002 order required relators to submit a sampling and testing plan of the waste material used to construct the berm in order to determine how to appropriately dispose of the material once it was removed. Within 30 days of the receipt of testing results, the relators were then required to submit a removal plan to the MPCA. Relators did not challenge the MPCA's January 16, 2002 order. Thus, as of January 2002, relators knew they were going to have to remove the berm.

■ The January 28, 2003 administrative order required relators to submit a plan for the proper evaluation, removal, and disposal of the shredder fluff in the berm. The plan was to be implemented immediately and the berm was to be completely removed within six months. But the order also provided a procedure by which relators could obtain a time extension for good cause. The record shows that the MPCA considered relators' concerns regarding the six-month time frame during the comment period before the issuance of the January 28, 2003 order. The MPCA determined that the six-month time frame was reasonable because relators had known since January 2002 that they would have to remove the berm, and the January 28, 2003 order provided a procedure whereby relators could request a time extension. The amount of time it would take to remove the berm is an issue uniquely within the expertise of the MPCA, and it is appropriate for this court to defer to the MPCA on this issue. Based on this record, we conclude that the agency's decision requiring relators to remove the berm

within six months is not arbitrary and capricious.

## II.

■ Relators contend that the MPCA erred in concluding that their use of shredder fluff to construct the berm constitutes the disposal of solid or hazardous waste. The objective of all statutory interpretation is to ascertain and effectuate the intent of the legislature. Minn.Stat. § 645.16 (2002). Pursuant to canons of statutory construction, words and phrases should be construed according to rules of grammar and according to their common and approved usage, unless it would be inconsistent with the intent of the legislature. Minn.Stat. § 645.08(1) (2002). We extend judicial deference, rooted in the separation-of-powers doctrine, to agency decision-makers in the interpretation of statutes that the agency is charged with administering. *Blue Cross & Blue Shield,* 624 N.W.2d at 278.

Minnesota law requires a permit to store or dispose of solid or hazardous waste. Minn.Stat. § 116.081, subd. 1 (2002); Minn. R. 7001.0520, 7001.3050, subp. 1 (2001). Anyone who produces waste must determine within 60 days whether the waste is hazardous. Minn. R. 7045.0214, subp. 1 (2001). Regardless of whether waste is determined to be hazardous or solid waste, it must be disposed of in an appropriate facility. Minn. R. 7035.0800, subp. 1, 7045.0208 (2001). In its January 28, 2003 administrative order, the MPCA determined that some of the shredder fluff generated at relators' facility contained PCBs in concentrations greater than 50 ppm. The MPCA further stated that, under Minn. R. 7045.0135, subp. 5 (2001), waste containing PCBs in excess of 50 ppm must be managed as hazardous waste. The MPCA concluded, in part, that

1. [Relators] are not in compliance with the environmental laws of Minnesota regarding solid and hazardous waste storage and disposal, storm water control, or proper waste evaluation.

2. By constructing a berm using shredder fluff, [relators] have disposed of solid waste without a permit in violation of Minn.Stat. § 116.081 and Minn. R. 7001.3050.

3. By constructing a berm using shredder fluff, [relators] have disposed of hazardous waste without a permit in violation of Minn. R. 7001.0520, and failed to manage hazardous waste in accordance with Minn. R. 7045.0208.

4. By constructing a berm using shredder fluff without updating stormwater management plans, [relators] have violated conditions in National Pollutant Discharge Elimination System General Permit G611000, Facility No. A00000813, November 1, 1997.

5. [Relators] store shredder fluff in various locations on the Facility without compliance with the solid waste storage standard established in Minn. R. 7035.2855.

### A. Solid Waste

We first examine the MPCA's conclusion that this material is solid waste. Relators assert that the MPCA's determination concerning the nature of shredder fluff is incorrect for several reasons. First, relators argue that shredder fluff is not solid waste. Minn.Stat. § 115A.03, subd. 34 (2002), defines "waste" as "solid waste, sewage sludge, and hazardous waste." "Solid waste" is defined as "garbage, refuse, sludge from a water supply treatment plant or air containment treatment facility, and other discarded waste materials and sludges, in solid, semisolid, liquid, or contained gaseous form, resulting from

industrial, commercial, mining and agricultural operations, and from community activities, but does not include hazardous waste." Minn.Stat. § 116.06, subd. 22 (2002). "Discard" is defined as "[t]o throw away; reject." *The American Heritage College Dictionary* 395 (3d ed.2000).

"Shredder residue" is defined in Minn. Stat. § 115A.90, subd. 6a (2002), as "the residue generated by shredding a motor vehicle, an appliance, or other source of recyclable steel after removing the reusable and recyclable materials." But because the term "shredder residue" does not appear in Minn.Stat. § 116.06, subd. 22, relators argue that the legislature did not consider it to be classified as solid waste. The MPCA counters this argument by noting that the definition of "shredder residue" is contained within the Waste Management Act, thereby necessarily constituting waste.

■ Looking at the language of Minn. Stat. § 116.06, subd. 22, we consider whether shredder fluff falls under the statute's catch-all category of "other discarded waste materials" resulting from an industrial operation. Federal regulations include shredder fluff in the definition of "PCB bulk product waste," which provides further support for the conclusion that shredder fluff is waste. 40 C.F.R. § 761.3 (2002) (defining PCB bulk product waste).

The Waste Management Act is a statutory framework that the MPCA is charged to administer, and it is appropriate to extend judicial deference to the agency in its interpretation of the provisions of the act. Based on this record and extending deference to the MPCA's interpretation of a statute it is charged to administer, we conclude that shredder fluff is "discarded waste material" resulting from an industrial process. Thus, we conclude that the MPCA did not err in holding that shredder fluff is solid waste.

## B. Hazardous Waste

Relators also argue that the shredder fluff is not hazardous waste. "Hazardous waste" is defined as

any refuse, sludge, or other waste material or combinations of refuse, sludge or other waste materials in solid, semisolid, liquid, or contained gaseous form which because of its quantity, concentration, or chemical, physical, or infectious characteristics may (a) cause or significantly contribute to an increase in mortality or an increase in serious irreversible, or incapacitating reversible illness; or (b) pose a substantial present or potential hazard to human health or the environment when improperly treated, stored, transported, or disposed of, or otherwise managed.

Minn.Stat. § 116.06, subd. 11 (2002). As previously noted, waste containing PCBs in a concentration greater than 50 ppm is defined as a form of hazardous waste. Minn. R. 7045.0135, subp. 5.

■ Relying on PCB testing from berm samples gathered by Wenck, an independent company, in February 2003 that were not in the record at the time that the MPCA issued its administrative order, relators argue that the waste in the berm is not hazardous because an average of all of the samples was below 50 ppm PCBs. The MPCA included the February 2003 partial test results in its motion to strike, but the agency subsequently withdrew its opposition to the test results and moved to supplement the record with Wenck's final report, which was prepared in July 2003, and an affidavit from Jeff Connell, a compliance coordinator with the MPCA. Connell's affidavit states that the Wenck report shows that approximately one-half of the waste in relators' berm is hazardous waste pursuant to Minn. R. 7045.0131,

subps. 7 and 8 (2001), because it contains lead that leaches more than five milligrams per liter. Relators did not respond to the MPCA's motion to supplement the record. We granted the motion to supplement the record on the ground that the Wenck report is documentary evidence of an uncontroverted nature that supports the agency's decision. *See In re Objections & Defenses to Real Property Taxes for the 1980 Assessment,* 335 N.W.2d 717, 718 n. 3 (Minn.1983). Based on the record and our standard of review, we conclude that the MPCA did not err in its determination that this material constitutes hazardous waste.

### C. Disposal and Storage

As an alternative argument, relators suggest that, even if shredder fluff is determined to be waste, its use to construct a berm or as daily cover in a landfill does not constitute disposal under Minn.Stat. § 115A.03, subd. 9 (2002). The statute defines "disposal" as "the discharge, deposit, injection, dumping, spilling, leaking, or placing of any waste into or on any land or water so that the waste or any constituent thereof may enter the environment or be emitted into the air, or discharged into any waters, including ground waters."

■ In support of its argument, relators offer a conclusory statement that they did not discard, abandon, or throw away the shredder fluff by either use of it and, therefore, did not discard it. But the MPCA found that the shredder fluff "is not being stored on an impervious surface [at relators' facility], nor are controls present to prevent storm water run-on or run-off." Based on the plain language of the statute and extending deference to the MPCA as the agency charged with enforcement of the statute, we conclude that the MPCA did not err in holding that

relator's use of the shredder fluff to construct the berm constitutes "disposal."

Relators also argue that the MPCA erred in holding that relators have stored shredder fluff in various locations on their property, other than the berm, in violation of the standards set forth in Minn. R. 7035.2855 (2001). The rule states specific requirements for waste storage, but also states that "[s]olid waste stored prior to beneficial use or reuse according to existing technology for the waste is exempt from this part." Minn. R. 7035.2855, subp. 1. Relators assert that the piles of shredder fluff stored on their property are exempt from Minn. R. 7035.2855 because the shredder fluff is being stored prior to beneficial use or reuse. In support of their assertion, relators state generally that shredder fluff is beneficially used as daily cover at landfills. Minn. R. 7035.2815, subp. 6 (2001), requires the owner or operator of a solid waste land disposal facility to maintain a cover system to ensure that waste does not become airborne and in order to minimize odors.

■ Relators' national search of caselaw dealing with shredder fluff yielded very little. But they have directed this court to *County of Milwaukee v. Superior of Wisc.,* 234 Wis.2d 218, 610 N.W.2d 484 (Wis.App.2000), for guidance. The Wisconsin intermediate appellate court stated in *County of Milwaukee* that shredder fluff has a beneficial use at landfills. *Id.* at 491. But the issue presented to the court in that instance was whether or not shredder fluff was "recyclable scrap" within the scope of the overweight permit for hauling limits. *Id.* at 487. The case did not arise in the context of or construe state or federal environmental rules or statutes. Therefore, we do not find it to be persuasive on this question of whether relators are exempt from Minn. R. 7035.2855.

The federal government adopted a PCB rule with provisions governing shredder fluff in 1998. 63 Fed.Reg. 35436 (June 29, 1998), amended by 64 Fed.Reg. 33759 (June 24, 1999). Shredder fluff is termed "PCB bulk product waste." 63 Fed.Reg. 35438 (June 29, 1998); 40 C.F.R. § 761.3 (2002). Disposal in landfills is permitted only if standards involving engineered liners and leachate control systems are met. 40 C.F.R. § 258.40 (2002); 40 C.F.R. § 761.62 (2002). Shredder fluff with liquid PCBs, which is involved here, must be tested prior to disposal to ensure that it will not leach beyond a specified amount of .10 ug/L PCBs. 40 C.F.R. § 761.62(b). While shredder fluff containing non-liquid PCBs may be used as daily landfill cover, the Environmental Protection Agency considers such use to be disposal of the material. 40 C.F.R. § 761.62(d); 63 Fed.Reg. 35412 (June 29, 1998).

On this record, we conclude that the MPCA did not err in holding that relators have stored shredder fluff in various locations on their property, other than the berm, in violation of the standards set forth in Minn. R. 7035.2855.

### III.

Relators argue that the MPCA erred in denying relators' request for a contested-case hearing. An agency must grant a petition for a contested-case hearing if it finds, among other things, that "there is a material issue of fact in dispute concerning the matter pending before the agency." Minn. R. 7000.1900, subp. 1 (2001). Relators waited until after the MPCA issued its January 28, 3002 administrative order to request a hearing. Relators requested a contested-case hearing to address whether shredder fluff is "waste" and whether using shredder fluff to construct the berm constituted "disposal" of the fluff. Rela-

tors did not raise these issues during the comment period.

■ Under Minn. R. 7000.1900, subp. 1, a contested-case hearing will only be granted if there is a "matter pending before the agency" and "a material issue of fact." Here, once the MPCA issued its January 28, 2003 administrative order, relators no longer had a matter pending before the agency. Thus, relators' request for a contested-case hearing after the issuance of the order was untimely. There was no material issue of fact to be heard at a contested-case hearing. Relators assert material issues of fact. But these issues are distinctly legal issues involving statutory interpretation, and relators point to no other fact issues for resolution in a contested-case hearing. Under the circumstances, we conclude that the MPCA did not err in denying relators' petition for a contested-case hearing.

### DECISION

The MPCA's decision to require relators to remove the earthen berm constructed with shredder fluff on their property within six months is not arbitrary and capricious, and the MPCA did not err in holding that the use of shredder fluff in the berm constitutes the disposal of solid or hazardous waste or by denying relators' request for a contested-case hearing.

**Affirmed.**