Andrew P. Moratzka, Marc A. Al, Riley A. Conlin, Stoel Rives, L.L.P., Minneapolis, Minnesota (for relators Large Power Intervenors)
Keith Ellison, Attorney General, Lisa Crum, Jeffrey K. Boman, Assistant Attorneys General, St. Paul, Minnesota (for respondent Minnesota Public Utilities Commission)
Keith Ellison, Attorney General, Ian Dobson, Assistant Attorney General, St. Paul, Minnesota (for respondent Office of the Minnesota Attorney General-Residential Utilities and Antitrust Division)
Elizabeth M. Brama, Valerie T. Herring, Kodi J. Verhalen, Briggs and Morgan, P.A., Minneapolis, Minnesota; and David R. Moeller, Duluth, Minnesota (for respondent Minnesota Power)
Considered and decided by Bjorkman, Presiding Judge; Connolly, Judge; and Florey, Judge.
FLOREY, Judge
In this certiorari appeal, relators Large Power Intervenors (the LPIs)[1] challenge a final order in rate proceedings initiated by respondent Minnesota Power. The LPIs argue that the Minnesota Public Utilities *4 Commission (the commission) violated the plain language of Minn. Stat. § 216B.1696 by excluding approximately $ 15.5 million of additional sales revenue from Minnesota Power's 2016 general-rate case. The commission had determined, in a different docket which is not the subject of this appeal, that the amount would be refunded to Minnesota Power's non-EITE customers in order to comply with section 216B.1696. Because the commission's decision to account for the additional sales revenue in the EITE docket, rather than in the general-rate case, was reasonable and in conformity with the plain language of section 216B.1696, we affirm.
FACTS
I. Factual and Procedural Background
In 2015, the legislature passed Minn. Stat. § 216B.1696 (the EITE statute), which sets forth a public policy favoring competitive rates for EITE customers:[2]
It is the energy policy of the state of Minnesota to ensure competitive electric rates for energy-intensive trade-exposed customers. To achieve this objective, an investor-owned electric utility that has at least 50,000 retail electric customers, but no more than 200,000 retail electric customers, shall have the ability to propose various EITE rate options within their service territory under an EITE rate schedule that include, but are not limited to, fixed-rates, market-based rates, and rates to encourage utilization of new clean energy technology.
Minn. Stat. § 216B.1696, subd. 2(a).
The statute directs the commission to approve a qualifying utility's proposed EITE rate schedule "upon a finding of net benefit to the utility or the state." Id. , subd. 2(b). An EITE rate schedule allows the utility to offer EITE customers credits that reduce the rate that they pay for electricity. This is important because it has allowed those customers to operate facilities that were otherwise cost-prohibitive.
The utility must then track in a separate account "the difference in revenue between what would have been collected under the electric utility's standard tariff and the EITE rate schedule." Minn. Stat. § 216B.1696, subd. 2(d). "In its next general rate case or through an EITE cost recovery rate rider between general rate cases, the commission shall allow the utility to recover any costs, including reduced revenues, or refund any savings, including increased revenues, associated with providing service to a customer under an EITE rate schedule." Id. But, a utility may not "recover any costs" from, or "refund any savings" to, any EITE customer or low-income residential ratepayers. Id .
A. EITE Docket
On June 30, 2016, Minnesota Power filed a petition, under Minn. Stat. § 216B.1696, to establish a competitive rate for EITE customers. Minnesota Power proposed an *5 EITE rate schedule that would provide a usage-based "Energy Charge Credit" to EITE customers who met certain conditions, and it proposed to recoup the cost of the credit through a surcharge on non-EITE, non-exempt customers. Minnesota Power predicted that the credit would spur increased electricity purchases by EITE customers, satisfying the statute's requirement that any EITE rate schedule approved by the commission produce a "net benefit" to the utility or the state. Minn. Stat. § 216B.1696, subd. 2(b).
On December 21, 2016, the commission approved Minnesota Power's proposed EITE rate schedule, but ordered Minnesota Power to file a rate-design proposal detailing how to recover the cost, or refund additional revenues, associated with implementing the EITE rate. The commission also ordered Minnesota Power to establish a tracker account to measure "the difference in revenue between what would have been collected under the electric utility's applicable standard tariff and the EITE rate schedule." The commission's December order provided that it "shall become effective immediately." Neither the LPIs nor Minnesota Power applied for rehearing within the time period allowed (20 days) under Minn. Stat. § 216B.27, subd. 1 (2018).[3]
On December 30, 2016, Minnesota Power made a compliance filing that included its cost-recovery proposal, several rate-design alternatives, and a revised communications plan. The matter came before the commission on March 9, 2017, and on April 20, 2017, the commission issued its order.
In the April 20, 2017 order, the commission:
• authorized Minnesota Power to collect a surcharge from non-EITE customers to recover the cost of providing credits to EITE customers;
• required Minnesota Power to distribute the EITE surcharge as a uniform per-kWh charge applicable to all customer classes;[4]
• directed Minnesota Power to refund to non-EITE customers any revenue increases resulting from increased sales to customers taking service under the EITE rate schedule;[5]
*6 • required Minnesota Power to report back on its efforts to identify customers who may be exempt, based on income, from paying the EITE surcharge; and
• specified the form and content of the notice that Minnesota Power must provide to non-EITE customers prior to collecting the surcharge.
The commission ordered Minnesota Power to submit a compliance filing within 30 days "setting forth the surcharge and refund mechanisms in detail, including the baseline gross revenue for 2016 and the methodology for determining net revenue increases." The order provided that it shall become effective immediately. Neither the LPIs nor Minnesota Power applied for rehearing within 20 days of the order.
On May 22, 2017, Minnesota Power submitted a compliance filing in which it proposed three modifications to the baseline calculation. On October 13, 2017, the commission issued an order (1) approving Minnesota Power's proposal to exclude rider revenue from the 2016 baseline calculation; (2) requiring Minnesota Power to use the actual 2016 calendar-year revenue from EITE customers as the baseline for calculating the extent of any refundable increases (thereby rejecting Minnesota Power's proposal to recognize that it had already accounted for the increased EITE-customer sales revenue by lowering its requested final rates in the pending rate case); and (3) rejecting Minnesota Power's proposal to use 2016 billing units, rather than revenue, as the baseline for calculating refunds. The commission reasoned that it had already determined, in the April 20, 2017 order, that Minnesota Power should use 2016 revenues as the baseline:
[T]he Commission's April 20th order specified that the refund should be calculated as the difference between the revenue [Minnesota Power] received from EITE customers in 2016, before the anticipated implementation of the EITE rate, and the revenue [Minnesota Power] received from EITE customers after the implementation of the EITE rate. To do as [Minnesota Power] now recommends would essentially deprive EITE customers of the full benefit of the EITE rate as intended by the statute.
On November 2, 2017, Minnesota Power and the LPIs sought reconsideration. The commission issued an order on January 2, 2018, denying reconsideration, and indicating that a more detailed order would follow within 30 days. On February 7, 2018, the commission issued a more detailed, final order denying reconsideration. In the February 2018 order, the commission found that (1) Minnesota Power's and LPIs' petitions were untimely and (2) the petitions did not present a basis for reconsideration.
With regard to the first finding, the commission noted that both Minnesota Power's and the LPIs' petitions focused on the surcharge-refund mechanism and the revenue-comparison baseline that were authorized in the April 2017 order. The commission determined that, to the extent Minnesota Power and the LPIs sought *7 reconsideration of the April 2017 order, their petitions were untimely given that neither party had applied for a rehearing of that order within the statutorily mandated 20 days. See Minn. Stat. § 216B.27, subd. 1. With regard to the second finding, the commission determined that the petitions did not present a basis for reconsideration because they did not raise new issues, point to new and relevant evidence, or expose errors or ambiguities in either the April 2017 or the October 2017 order. On March 8, 2018, the LPIs filed a notice of appeal (A18-0382 or the EITE-docket appeal).
B. Rate-Case Docket
During the pendency of the EITE docket, on November 2, 2016, Minnesota Power filed a general-rate case, under Minn. Stat. § 216B.16, seeking an annual rate increase of approximately 9.1 percent. The filing included a proposed interim-rate schedule. The next month, one of Minnesota Power's customers, U.S. Steel, issued a press release publicly announcing its plans to restart, in 2017, its Keewatin mining facility (Keetac). The anticipated increased revenue from Keetac prompted Minnesota Power to request a lower interim-rate increase than it had proposed in its initial rate filing. On April 13, 2017, the commission approved Minnesota Power's interim-rate request.
On March 12, 2018, the commission issued an order addressing multiple issues, including how Minnesota Power was to account for increased sales revenue from Keetac. The commission explained that, after Minnesota Power learned of U.S. Steel's intention to restart Keetac, Minnesota Power "revised its sales forecast ... by including in its test year nine months of anticipated electricity rates to Keetac in 2017."
The commission concluded that, "[b]ecause evidence in the record support[ed] a conclusion that sales to Keetac [would] continue for the foreseeable future, [Minnesota Power] [would] be required to reflect 12 months of sales, and a corresponding $ 1.8 million revenue increases, in its test year calculations." The commission provided:
[R]evenues from Keetac should only be recognized once. Concurrent proceedings concerning implementation of the EITE statute and establishing the Company's general rates make this accounting uniquely challenging, but Minnesota Power should not be credited with having received these revenues twice.
And, because the test-year revenue from Keetac must be accounted for as an increase in utility revenue in a tracker established under Minn. Stat. § 216B.1696, and a portion of it must be used to offset the costs of the discounted EITE rate provided under that statute, it is appropriate to reduce [Minnesota Power's] net test-year revenue amount.
That is, the Commission agrees that (1) [Minnesota Power's] test year should reflect the full, annualized amount of sales revenue for Keetac, and (2) the net test year revenue amount must also reflect that those revenues are subject to the requirement that certain increased revenues must be separately tracked and are subject to offset or refund under Minn. Stat. § 216B.1696, subd. 2(d).
Accordingly, the Commission will require reduction of net test year revenue by an amount equal to the revenue that must be used as an offset or refund in the section 216B.1696 tracker, on an annualized basis. In this case, that amount is equal to the lesser of (a) the annualized Keetac revenue and (b) the annualized cost of the EITE discount. Revenue not required to cover test-year EITE
*8 rate costs will remain in the test year. The net effect is an upward adjustment of approximately $ 2.6 million in test-year revenue, which will reduce the overall test year revenue deficiency.
The [LPIs'] argument that revenue increases from EITE customers cannot be accounted for in the section 216B.1696 tracker is contrary to the plain language of the statute; Minn. Stat. § 216B.1696, subd. 2(d), requires the utility to track certain revenue increases for refund. Nor does the statute require that test-year revenue accounting in a rate case disregard revenue-increase offsets or refunds provided for by the statute. In fact, the statute provides for tracker recovery or refund to be authorized as part of a general rate case, as the Commission is doing in this case. The Commission concludes that the [LPIs'] interpretation of the statute cannot be correct.
On March 30, 2018, the LPIs filed a petition for reconsideration, stating the petition was "in response to errors in the Commission's rate design methodology" and to "reiterate its concerns regarding the Commission's failure to properly implement the EITE statute." On May 29, 2018, the commission denied the LPIs' petition for reconsideration on issues related to the EITE rate and EITE cost recovery. On June 28, 2018, the LPIs petitioned our court for a writ of certiorari to review the commission's March 12, 2018, and May 29, 2018, orders (the rate-case appeal).
C. Judicial Review of Commission's Orders
On June 19, 2018, our court issued an order limiting the scope of the EITE-docket appeal to the October 2017 order. We stated, "The scope of the appeal does not extend to issues finally decided in the commission's April 20, 2017 order, including the issue of whether the commission's requirement of a refund mechanism violates Minn. Stat. § 216B.1696." On July 25, 2018, we dismissed the EITE-docket appeal, concluding that the LPIs and Minnesota Power failed to properly preserve the issues for judicial review. Reiterating our decision in the June 19 order, we stated that "the requirement for a refund mechanism with a 2016 baseline was decided in the commission's April 2017 order," and, therefore, issues finally decided in the April 2017 order were beyond the scope of the appeal. The supreme court denied the LPIs' request for further review. In re Minn. Power's Revised Petition for Competitive Rate for EITE Customers , No. A18-0382 (Minn. App. July 25, 2018) (order), review denied (Minn. Sept. 26, 2018).
On September 18, 2018, we issued an order denying the commission's motion to dismiss the rate-case appeal-the matter now before us. We concluded that the LPIs were precluded from using the appeal as a vehicle to challenge the April 20, 2017 order in the EITE docket, but determined that, whether the commission erred by excluding certain revenues from Minnesota Power's rate case involved issues related to, but distinct from, the issues decided in the EITE docket.
ISSUE
Did the commission err by accounting for the additional EITE-customer sales revenue in the EITE docket rather than the rate-case docket?
ANALYSIS
The interpretation of Minn. Stat. § 216B.1696, as well as its interplay with a general-rate determination, are both matters of first impression. Furthermore, how the commission is to integrate implementation of the EITE statute with a general-rate case is, no doubt, complex.
*9 Our review of the commission's orders is governed by the Minnesota Administrative Procedure Act (MAPA). Minn. Stat. §§ 14.63 -.69, 216B.52 (2018). Under the MAPA, we may reverse or modify the commission's decision if the decision prejudiced the petitioners' substantial rights because it was:
(a) in violation of constitutional provisions; or
(b) in excess of the statutory authority or jurisdiction of the agency; or
(c) made upon unlawful procedure; or
(d) affected by other error of law; or
(e) unsupported by substantial evidence in view of the entire record as submitted; or
(f) arbitrary or capricious.
Minn. Stat. § 14.69. The party challenging an agency decision bears the burden of proving that the decision violated provisions of the MAPA. In re Review of 2005 Annual Automatic Adjustment of Charges for All Elec. & Gas Utils. , 768 N.W.2d 112, 118 (Minn. 2009).
Because the commission's decision to account for the additional EITE-customers' sales revenue in the EITE docket constitutes a legal conclusion, "we review this decision under an arbitrary and capricious standard." In re Max Schwartzman & Sons, Inc. , 670 N.W.2d 746, 752-53 (Minn. App. 2003). The commission's decision is arbitrary and capricious if it represents its own will, rather than its judgment. Id. at 753.
A decision will be deemed arbitrary and capricious if the agency relied on factors which the legislature had not intended it to consider, if it entirely failed to consider an important aspect of the problem, if it offered an explanation for the decision that runs counter to the evidence, or if the decision is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.
Id. (quotation omitted). "If there is room for two opinions on a matter, the [c]ommission's decision is not arbitrary and capricious, even though the court may believe that an erroneous decision was reached." 2005 Annual Automatic Adjustment of Charges , 768 N.W.2d at 120.
An administrative agency's decision enjoys a presumption of correctness. In re Annandale & Maple Lake NPDES/SDS Permit Issuance for Discharge of Treated Wastewater , 731 N.W.2d 502, 514 (Minn. 2007). "Deference should be shown by courts to the agencies' expertise and their special knowledge in the field of their technical training, education, and experience." Id. (quotation omitted). Appellate courts "have deferred to an agency's expertise and special knowledge when (1) the agency is interpreting a regulation that is unclear and susceptible to more than one interpretation; and (2) the agency's interpretation is reasonable." Id. at 515 ; see also Risdall v. Brown-Wilbert, Inc. , 753 N.W.2d 723, 733 (Minn. 2008). We consider several factors when determining the level of judicial deference afforded to the agency's interpretation: (1) "the nature of the regulation at issue"; (2) "whether the subject matter of the regulation is within the agency's technical training, education, and experience"; and (3) whether "the agency's interpretation of an unclear regulation is reasonable." In re Alexandria Lake Area Sanitary Dist. NPDES/SDS Permit No. MN0040738 , 763 N.W.2d 303, 312-13 (Minn. 2009).
While appellate courts "retain the authority to review de novo errors of law which arise when an agency decision is based upon the meaning of words in a statute," see *10 In re Denial of Eller Media Co.'s Applications for Outdoor Adver. Device Permits in Mounds View , 664 N.W.2d 1, 7 (Minn. 2003), "[w]e extend judicial deference ... to agency decision-makers in the interpretation of statutes that the agency is charged with administering." Max Schwartzman & Sons , 670 N.W.2d at 754 ; see also In re Excess Surplus Status of Blue Cross & Blue Shield of Minn. , 624 N.W.2d 264, 278 (Minn. 2001).
In determining whether an agency has properly applied a statute, courts focus on the words of the law "to ascertain and effectuate the intention of the legislature." Minn. Stat. § 645.16 (2018) ; First Nat'l Bank of N. v. Auto. Fin. Corp. , 661 N.W.2d 668, 670 (Minn. App. 2003), review denied (Minn. Aug. 5, 2003). "If the meaning is plain and unambiguous we apply that meaning as a manifestation of legislative intent." Id. "Plain meaning embodies ordinary use of the language in the context of the whole-act structure, applying the usual conventions of grammar and syntax." Id. Where an agency's interpretation contravenes the plain language of the statute, it is not entitled to judicial deference. In re Claim for Benefits by Meuleners , 725 N.W.2d 121, 124 (Minn. App. 2006). The dispute in this appeal centers on the commission's interpretation and application of Minn. Stat. § 216B.1696, subd. 2(d), which provides:
Upon approval of any EITE rate schedule, the utility shall create a separate account to track the difference in revenue between what would have been collected under the electric utility's applicable standard tariff and the EITE rate schedule. In its next general rate case or through an EITE cost recovery rate rider between general rate cases, the commission shall allow the utility to recover any costs, including reduced revenues, or refund any savings, including increased revenues, associated with providing service to a customer under an EITE rate schedule. The utility shall not recover any costs or refund any savings under this section from any energy-intensive trade-exposed customer or any low-income residential ratepayers as defined in Minnesota Statutes section 216B.16, subdivision 15.
The LPIs argue that,[6] by accounting for the approximately $ 15.5 million of additional sales revenue in the EITE docket, rather than in the rate-case docket, the commission violated the plain language of subdivision 2(d). The LPIs allege that the improper accounting resulted in EITE and low-income residential customers being "forced to pay more than 25% of the cost" of the EITE rate, which contradicts the plain language of the statute directing EITE-surcharge-eligible customers to bear the cost.
The LPIs argue that the commission's actions violated the express mandates of Minn. Stat. § 216B.1696, subd. 2(d). According to the LPIs, subdivision 2(d) provides for "either a surcharge or a refund, but not both, with EITE customers and low-income customers being excluded from both." The LPIs also argue that the statutory language directing Minnesota Power to recover costs or refund savings in either the "next general rate case or through an EITE cost recovery rate rider between general rate cases," see Minn. Stat. § 216B.1696, subd. 2(d), required the commission to account for the additional revenue in the rate-case docket.
*11 We conclude that the commission did not err by accounting for the additional EITE-customer sales revenue in the EITE docket. The LPIs' claim that the commission violated the plain language of the EITE statute by excluding the approximately $ 15.5 million of additional sales revenue from the rate-case docket is problematic for at least three reasons: (1) the plain language of subdivision 2(d) makes clear that the commission must allow Minnesota Power to "recover any costs" from, or "refund any savings" to, non-EITE, non-exempt customers associated with providing a discounted EITE rate to EITE customers;[7] (2) subdivision 2(d) expressly prohibits Minnesota Power from "refund[ing] any savings" to EITE and low-income customers; and (3) the commission's accounting of the additional sales revenues from the rate case to the EITE case was a consequence of the surcharge-refund mechanism established in the April 20, 2017 order-an order that is beyond the scope of this appeal.
Pursuant to subdivision 2(d), the commission approved, in its April 20, 2017 order, a cost-recovery rider authorizing Minnesota Power to surcharge non-EITE, non-exempt customers for the cost of the EITE rate, and directing Minnesota Power to refund to those customers "any revenue increases resulting from increased sales to customers taking service under the EITE rate schedule." The LPIs failed to seek reconsideration of the commission's order.
In accordance with the April 20, 2017 EITE-docket order, the commission directed, in its March 12, 2018 rate-case order, that $ 15.5 million of Keetac revenue "must be used as an offset or refund in the section 216B.1696 tracker." Because $ 15.5 million of additional EITE-customer revenue would be accounted for as a refund in the EITE docket, the commission required a "reduction of net test year revenue" in the rate-case by an equal amount. The commission explained:
[R]evenues from Keetac should only be recognized once. Concurrent proceedings concerning implementation of the EITE statute and establishing [Minnesota Power's] general rates make this accounting uniquely challenging, but Minnesota Power should not be credited with having received these revenues twice.
In its March 12, 2018 rate-case order, the commission expressly rejected, as contrary to the plain language of the EITE statute, the LPIs' argument that "revenue increases from EITE customers cannot be accounted for in the section 216B.1696 tracker." Subdivision 2 directs Minnesota Power to "create a separate account to track" certain revenue increases for refund. Minn. Stat. § 216B.1696, subd. 2(d). The statute provides that, in the "next general rate case or through an EITE cost recovery rate rider between general rate cases," Minnesota Power is permitted to recover costs or refund savings associated with providing a discounted EITE rate. Id. The LPIs argue that, because the commission never approved a cost-recovery rider in the EITE docket, the "next general rate case" is the rate-case docket. We reject this assertion for three reasons.
First, the LPIs waived this argument by not presenting it to the commission in their petitions for reconsideration.
*12 See Minn. Stat. § 216B.27, subd. 2. Second, the commission authorized an EITE cost-recovery rate rider in its April 20, 2017 EITE-docket order. In the order, the commission expressly directed Minnesota Power to collect a surcharge from non-EITE, non-exempt customers as well as refund to those customers any revenue increases resulting from increased sales associated with the EITE rate. Again, this refund-surcharge mechanism, approved by the commission in the EITE docket, is beyond the scope of this appeal.
Finally, even if we deemed the language of Minn. Stat. § 216B.1696 to be susceptible to more than one interpretation, we would reach the same result. See Annandale , 731 N.W.2d at 514. In highly technical and complex matters, such as the case before us, we defer to an agency's expertise and special knowledge in interpreting a statute it is charged with administering. See Max Schwartzman & Sons , 670 N.W.2d at 754 ; Annandale , 731 N.W.2d at 514. There is no indication that the commission's decisions were unreasonable, arbitrary, or capricious, and we are not persuaded that its interpretation of section 216B.1696 violates the statute's plain meaning. We, therefore, defer to the commission's implementation of the EITE statute.
DECISION
The commission's decision to account for $ 15.5 million of additional sales revenue in the EITE docket was not arbitrary and capricious. Pursuant to Minn. Stat. § 216B.1696, subd. 2(d), the commission determined that the increased revenue would be refunded to non-EITE customers to offset the surcharges associated with providing a discounted EITE rate to EITE customers. The commission's decision was reasonable and in conformity with the plain language of section 216B.1696. Accordingly, we affirm the commission's March 12, 2018 and May 29, 2018 orders.
Affirmed.

The LPIs are a group of relators, self-described as "an ad hoc consortium of large industrial customers of Minnesota Power ... each meeting the definition of EITE customers under Minn. Stat. § 216B.1696."

EITE customers include:
(1) an iron mining extraction and processing facility, including a scram mining facility as defined in Minnesota Rules, part 6130.0100, subpart 16;
(2) a paper mill, wood products manufacturer, sawmill, or oriented strand board manufacturer;
(3) a steel mill and related facilities; and
(4) a retail customer of an investor-owned electric utility that has facilities under a single electric service agreement that: (i) collectively imposes a peak electrical demand of at least 10,000 kilowatts on the electric utility's system, (ii) has a combined annual average load factor in excess of 80 percent, and (iii) is subject to globally competitive pressures and whose electric energy costs are at least ten percent of the customer's overall cost of production.
Minn. Stat. § 216B.1696, subd. 1(c).

Under section 216B.27, a party may seek rehearing of "any decision constituting an order or determination" within 20 days after service by the commission of that decision. Minn. Stat. § 216B.27, subd. 1. The failure to seek hearing of "any decision constituting an order or determination of the commission" precludes judicial review. Id. , subd. 2.

The commission found that "a uniform per-kWh charge applied to all customer classes is the fairest way to apportion the cost of the EITE credits." It stated, "[t]his approach will treat all classes equally and allow for any needed changes to [Minnesota Power's] overall rate design to be made in its pending rate case."

The commission found that this directive "comports with the EITE statute, which requires that [Minnesota Power] 'refund any savings, including increased revenues, associated with providing service to a customer under an EITE rate schedule.' " The commission instructed:
[T]he refund should be calculated as the difference between the revenue [Minnesota Power] received from EITE customers in 2016, before the anticipated implementation of the EITE rate, and the revenue [Minnesota Power] receives from EITE customers after implementation of the EITE rate. Calculating the refund in this way makes sure that (1) EITE customers receive the full benefit of the EITE rate as intended by the statute; (2) non-EITE ratepayers receive refunds of some or all of the surcharges they pay based on "increased revenues" associated with the EITE rate as required by the statute; and (3) [Minnesota Power] is neither harmed nor enriched by the EITE rate. As such, the refund mechanism ensures that the EITE rate is revenue neutral as applied to [Minnesota Power].
In other words, the commission ordered that, if the EITE credits result in Minnesota Power receiving higher revenues (because of increased demand) from EITE customers, Minnesota Power must use those revenues to reimburse customers who paid the surcharge. This two-part requirement is referred to as the surcharge-refund mechanism.
The commission's order specified that using "actual 2016 calendar year EITE-customer revenue as the baseline for calculating the extent of any refundable increases" would be most appropriate.

Minnesota Power does not seek reversal of the commission's order in this appeal. As a respondent to the appeal, Minnesota Power argues that the commission properly exercised its statutory authority when accounting for the additional sales revenue in light of the mandates of the EITE statute.

The LPIs' argument that "the EITE Statute mandates either a surcharge or a refund (but not both)" belies logic. That is, it is unclear why increased revenues would be refunded to customers who would not have paid a surcharge. And furthermore, the surcharge-refund mechanism was approved in the April 20, 2017 order, thus precluding the LPIs from challenging it in this appeal.